# *In re Mobley*

United States Bankruptcy Court for the Northern District of Ohio

December 6, 2012, Decided; December 6, 2012, Filed, Entered

Case No. 12-32247

**Reporter**
2012 Bankr. LEXIS 5658 *; 2012 WL 6086878

In Re: Dean A. Mobley, Debtor(s)

## Case Summary

**Procedural Posture**

Movant Chapter 7 trustee filed a motion seeking an order under *11 U.S.C.S. § 542(a)* which required a Chapter 7 debtor to turn over a motorcycle that was titled in his ex-wife's name and possessed by his ex-wife, and a determination that she was entitled under *11 U.S.C.S. §§ 547* and *548* to recover the motorcycle for the debtor's bankruptcy estate.

**Overview**

The debtor transferred possession of a motorcycle he owned to his ex-wife, and the State of Ohio issued a certificate of title in the ex-wife's name in April 2012, one month before the debtor declared Chapter 7 bankruptcy. A trustee was appointed to administer the debtor's bankruptcy case, and she filed a motion seeking an order which required the debtor to turn over the motorcycle and a determination that she was allowed under *11 U.S.C.S. §§ 547* and *548* to recover the motorcycle for the debtor's estate. The court denied the trustee's motion. The debtor did not possess the motorcycle and lost title to it, pursuant to *Ohio Rev. Code Ann. § 4505.04*, as soon at title was issued in his ex-wife name, and he did not have the power to turn over the motorcycle to the trustee. Although the trustee could have filed her action against the debtor's ex-wife, she had not done so, and any action she filed against the debtor's ex-wife under *11 U.S.C.S. §§ 542*, *547*, or *548* had to be in the nature of an adversary, pursuant to *Fed. R. Bankr. P. 7001*, not by motion.

**Outcome**
The court denied the trustee's motion.

**Counsel: [*1]** For Dean A Mobley, Debtor: James E Hitchcock, Defiance, OH.

Trustee: Ericka S Parker, Toledo, OH.

**Judges:** Richard L. Speer, United States Bankruptcy Judge.

**Opinion by:** Richard L. Speer

## Opinion

# EXHIBIT 7

**DECISION AND ORDER**

Before this Court is the Motion of the Trustee, Ericka S. Parker, for Turnover and to Avoid Transfer of Personal Property. (Doc. No. 23). In her Motion, the Trustee requests "an Order directing the Debtor to turn over the 2006 Titan Sidewinder Motorcycle and title and enter an Order avoiding the transfer on the title to the vehicle." *Id.* Said motorcycle was, in the time period immediately preceding the commencement of the Debtor's bankruptcy case, physically transferred to and titled in the name of the Debtor's former spouse, Patricia Mobley.

On the Trustee's Motion, the Debtor filed a response. In his response, the Debtor partially objected to the relief sought by the Trustee, setting forth, *inter alia*, that he "cannot legally return the cycle due to Ms. Mobley being the title owner." (Doc. No. 24). The Court, for the reasons set forth below, finds the position of the Debtor to be well taken.

**DISCUSSION**

For the first part of her Motion, that for turnover, the Trustee cites to *11 U.S.C. § 542*. For the second [*2] portion of her motion, concerning the avoidance of a transfer of personal property, the Trustee cites to *11 U.S.C. §§ 547* and *548*. Each of these parts of the Trustee's Motion is now addressed in order.

Section 542 provides a mechanism by which a trustee may obtain control of property for administration on behalf of a debtor's bankruptcy estate. *In re Richard Osterwalder, 407 B.R. 291, 294 (Bankr.N.D.Ohio 2008)*. In relevant part, *§ 542(a)* provides:

> an entity . . . in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under *section 363* of this title, or that the debtor may exempt under *section 522* of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate.

A trustee seeking to compel turnover under *§ 542(a)* bears the burden to show that the requirements of the statute are met. *In re DBSI, Inc., 468 B.R. 663, 669 (Bankr. D.Del. 2011)*.

A trustee's burden under *§ 542(a)* will be satisfied when the existence of each of these three elements is established:

> (1) the entity against whom turnover is sought was in possession, custody [*3] or control of the property to be turnover;
>
> (2) the property to be turned over is subject to administration by the trustee (*i.e.*, the trustee may use, sell or lease the property under *§ 363*) or the property may be exempted by debtor; and
>
> (3) the property to be turned over must be more than an inconsequential value or benefit to bankruptcy estate.

*In re Bailey, 380 B.R. 486, 490 (B.A.P. 6th Cir. 2008)*. For these requirements of *§ 542(a)*, the Trustee has not met her burden with respect to elements one and two. As now explained, the basis for this conclusion is derived from this uncontested fact: the motorcycle for which the Trustee seeks to have the Debtor

turnover was, on a prepetition basis, physically transferred to and titled solely in the name of the Debtor's ex-wife.

The first element of § 542(a) requires that, before this Court can compel turnover, it must be shown that the entity against whom turnover is sought is in possession, custody or control of the property to be turned over. 11 U.S.C. § 542(a). This requirement serves to ensure that the entity against whom turnover is sought is capable of compliance. *In re Rood, 459 B.R. 581, 607 (Bankr. D.Md. 2011)*. See also *Lovald, Trustee v. Falzerano (In re Falzerano), 454 B.R. 81, 86 (8th Cir. B.A.P. 2011)* [*4] (turnover denied where defendants never had possession of property). For her Motion, the entity against whom turnover is sought is the Debtor.

Compliance with the Trustee's motion for turnover in this particular case, however, appears to be a matter beyond the Debtor's control, with the Debtor, prior to seeking bankruptcy relief, having relinquished both physical possession and legal title to the motorcycle to his former spouse, Ms. Mobley.[1] The motorcycle, thus, cannot be said to be within the Debtor's possession, custody or control for purposes of § 542(a).

This is not to say that the Debtor does not have a duty to cooperate with the Trustee. On the matter of turnover, therefore, the Trustee could seek to use, and apparently has used the Debtor as an intermediary with Ms. Mobley. 11 U.S.C. § 521; Fed.R.Bankr.P. 4002. However, it would appear in this particular case that the Debtor's efforts as an intermediary would be futile, as the following [*5] statement, contained in correspondence sent by Debtor's attorney to the Trustee, shows:

> The former Ms. Mobley has indicated that she wanted no part of this. The cycle was hers. She was not giving it up, and she would make his [the Debtor's] life a living hell.

(Doc. No. 31, Ex. B).

However, even assuming, *arguendo*, that the Debtor could facilitate the delivery to the Trustee of the motorcycle now owned by his former wife, a more fundamental problem exists regarding turnover under § 542(a). The second requirement of § 542(a), *supra*, holds that a trustee may only seek the turnover of property when the property is subject to administration by the trustee (*i.e.*, the trustee may use, sell or lease the property under § 363) or the property may be exempted by the debtor. In more simplistic terms, this requirement means that the property to be turned over must be estate property. As this Court previously explained:

> Generally, a trustee can only use or sell property of the estate. 11 U.S.C. § 363(b)(1). Likewise, a debtor may only exempt property of the estate. 11 U.S.C. § 522(b)(1). Thus, although not specifically stated in § 542, fundamental to the concept of "Turnover" is that the asset to be [*6] turned over must be property of the debtor's bankruptcy estate.

*In re Richard Osterwalder, 407 B.R. 291, 294 (Bankr. N.D.Ohio 2008)* (internal citations omitted). see also *In re White, 389 B.R. 693, 699 (B.A.P. 9th Cir. 2008)* ("Essential element of a turnover order, necessarily decided in every turnover ruling, is that the property to be turned over is property of the bankruptcy estate.").

---

[1] If the Trustee has evidence that the Debtor transferred his interest in his motorcycle for the purpose of keeping the property beyond the purview of the bankruptcy estate, an action to deny discharge could be brought. See **11 U.S.C. § 727(a)(2)(A)**.

As shortly set forth in more detail, the prepetition transfer made by the Debtor of his motorcycle to his former spouse, Ms. Mobley, means that the Debtor's bankruptcy estate does not, at the present, have an interest in the vehicle. As such, the Trustee has no authority to administer the property, thus depriving the Trustee of any basis to obtain — as property she can use, sell or lease under *§ 363* — the turnover of the property under *§ 542(a)*. The estate's present lack of interest in Ms. Mobley's motorcycle is a consequence of the underlying nature of estate property.

At the commencement of a bankruptcy case, generally all interests held by a debtor in property become encompassed within a bankruptcy estate. *11 U.S.C. § 541(a)*. Conversely, if a debtor does not, when a case is commenced, hold an interest [*7] in property, the estate gains no interest in the property. Whether a debtor actually has an interest in property is a matter determined by applicable nonbankruptcy law, [2] in this case Ohio law, since the motorcycle at issue is titled under Ohio law.

With regards to motor vehicles, including motorcycles, Ohio is a certificate of title state. *O.R.C. § 4505.04*. As a certificate of title state, Ohio law generally proscribes a court from recognizing the interest of any person in or to any motor vehicle unless it is evidenced by a certificate of title. In relevant part, *O.R.C. § 4505.04* sets forth:

> (A) No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person, shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle,. . .
>
> (B) . . . no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle [*8] sold or disposed of, or mortgaged or encumbered, unless evidenced:
> (1) By a certificate of title, . . .

In this case, these facts are not in dispute: (1) on April 9, 2012, a certificate of title was issued regarding the motorcycle for which the Trustee now seeks turnover; (2) in this certificate of title, Ms. Mobley was denominated as the sole owner of the vehicle; and (3) subsequently, on May 11, 2012, the Debtor sought relief in this Court under Chapter 7 of the Bankruptcy Code. Based, therefore, upon an application of *O.R.C. § 4505.04*, it follows from these facts that, when he filed for bankruptcy relief, the Debtor had no interest in Ms. Mobley's motorcycle. As a consequence, the Debtor's bankruptcy estate likewise has no interest in Ms. Mobley's motorcycle, thereby insulating the vehicle from the Trustee's Motion for turnover under *§ 542(a)*.

A couple of points regarding turnover are, at this juncture, in order. First, turnover under *§ 542* describes only the power of a trustee to force persons holding property of the bankruptcy estate to turn that property over to the estate; it does not define the interest of the estate in that property. Similarly, an action brought under *§ 542* for [*9] turnover cannot be used as a method to determine disputed rights of parties to property; rather, turnover is a limited remedy for a trustee to obtain what is acknowledged to be property of the bankruptcy estate. *11 U.S.C.A. § 542(a)*. *In re Hechinger Investment Co. of Delaware, Inc., 282 B.R. 149, 161-62 (Bankr. D. Del. 2002)*.

The deficiencies in the Trustee's Motion for Turnover also cannot be sidestepped by the Trustee simply substituting Ms. Mobley, in the stead of the Debtor, as the party against whom turnover is sought under *§*

---

[2] *Butner v. U.S., 440 U.S. 48, 54, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979)* (". . . Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.").

*542(a)*. Pursuant to *Bankruptcy Rule 7001(1)*, if an action is brought by a trustee against a nondebtor party for turnover, it must be maintained through an adversary proceeding, not by way of a motion. *See Camall Co. v. Steadfast Ins. Co. (In re Camall Co.), 16 Fed.Appx. 403, 407 (6th Cir.2001)* ("Courts have given effect to *Bankruptcy R. 7001* by holding that 'a turnover proceeding commenced by motion . . . will be dismissed.'"), *citing In the Matter of Thomas J. Perkins, Jr., 902 F.2d 1254, 1258 (7th Cir.1990)*. Accordingly, for all these reasons, the Trustee's Motion for Turnover under *§ 542(a)* must be denied.

The Court now turns to address the second part of [*10] the Trustee's Motion, concerning the avoidance of the Debtor's transfer of his motorcycle to Ms. Mobley. In certain situations, property, although not first encompassed in a debtor's bankruptcy estate, may be subsequently brought within the bankruptcy estate through the use of certain avoiding powers conferred upon a trustee. In this matter, the Trustee, in the second part of her Motion, cites to two avoiding powers as a basis to recover the motorcycle now owned by Ms. Mobley: (1) *11 U.S.C. § 547*, concerning preferential transfers; and (2) *11 U.S.C. § 548*, regarding fraudulent transfers. If successful on either of these actions, the avoided transfer is preserved for the benefit of the Debtor's bankruptcy estate. *11 U.S.C. § 551*.

At this point, however, the merits of the Trustee's actions under both *§ 547* and *§ 548* cannot be addressed. Again, as with an action against a nondebtor party for turnover, *Bankruptcy Rule 7001(1)* requires that an action to avoid a transfer under either *§ 547* or *548* must by brought by way of an adversary proceeding, not by way of motion. *In re Value Music Concepts, Inc., 329 B.R. 111, 117 (Bankr. N.D. Ga. 2005)*. This is necessary aspect of due process. *See Havoco of Am., Ltd. v. Hill, 197 F.3d 1135, 1139-40 (11th Cir.1999)* [*11] (fraudulent conveyance had to be brought via an adversary proceeding in which wife was joined as defendant, in order to protect wife's due process rights). Consequently, until an adversary proceeding is brought, the Court cannot address the Trustee's claims under *Bankruptcy Code §§ 547* and *548*.

For all these reasons, the Motion of the Trustee for Turnover and to Avoid Transfer of Personal Property, cannot be Granted. In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Motion of the Trustee, Ericka S. Parker, for Turnover and to Avoid Transfer of Personal Property, (Doc. No. 23), be, and is hereby, DENIED.

Dated: December 6, 2012

/s/ Richard L. Speer

Richard L. Speer

United States

Bankruptcy Judge

End of Document

# VML Co., LLC v. Meguiar's, Inc. (In re VML Co., LLC)

United States Bankruptcy Court for the Western District of Tennessee

March 10, 2017, Decided

Case No. 09-24507-E, Chapter 11, Adv. Proc. No. 09-00400

**Reporter**
2017 Bankr. LEXIS 4625 *

In re VML COMPANY, LLC, Debtor.VML COMPANY, LLC, Plaintiff, v. MEGUIAR'S, INC., Defendant.

## Case Summary

**Overview**

HOLDINGS: [1]-Debtor had not met its burden to establish that it was entitled to summary judgment on its claim that defendant setoff outstanding post-petition debt against amounts that debtor owed defendant, pre-petition, in violation of the automatic stay because the court had not been shown sufficient facts to determine, at a minimum, an action effecting a setoff, the character of the obligations (i.e. pre-or post-petition; pre-or post-confirmation) that were allegedly setoff against one another, and the amount of the mutual obligations which were allegedly setoff; [2]-The court lacked jurisdiction to hear Count II of debtor's complaint, which sought turnover pursuant to *11 U.S.C.S. § 542(b)*, due to the res judicata effect of debtor's confirmed plan; [3]-Even if the court had jurisdiction over Count II, debtor was attempting to use *§ 542* to impermissibly litigate a contract dispute.

**Outcome**
Summary judgment granted for defendant.

**Counsel:** [*1] For VML Company, LLC, a Delaware Corporation, dba Valley Manufacturing and Logistics Company, LLC, Debtor (09-24507): Toni Campbell Parker, Memphis, TN.

For U.S. Trustee, U.S. Trustee (09-24507): Karen P. Dennis, Memphis, TN.

For Committee of Unsecured Creditors, Creditor Committee (09-24507): Steven N. Douglass, Harris Shelton Hanover Walsh, PLLC, Memphis, TN; John L. Ryder, Memphis, TN.

For VML Company, LLC, a Delaware Corporation, Plaintiff (09-00400): Toni Campbell Parker, Memphis, TN; Sayera Qasim, Parker Poe Adams & Bernstein, Charlotte, NC; Henry C. Shelton, III., LEAD ATTORNEY, Adams and Reese, Memphis, TN.

For Meguiar's, Inc., Defendant (09-00400): Michael D. Tauer, LEAD ATTORNEY, Michael P. Coury, Michael David Tauer, Glankler Brown PLLC, Memphis, TN.

**Judges:** George W. Emerson, Jr., UNITED STATES BANKRUPTCY JUDGE.

**Opinion by:** George W. Emerson, Jr.

# Opinion

MEMORANDUM OPINION

These matters are before the Court on the motion of the Debtor, VML Company, LLC, ("Debtor"), for partial summary judgment as to Count I and Count II of the Debtor's Complaint, filed with this Court on June 23, 2016. (Chapter 11 Case No. 09-24507; Adv. Proc. No. 09-00400, ECF No. 32). Defendant Meguiar's, Inc., (hereinafter "Defendant") **[*2]** filed its objection to Debtor's motion on October 21, 2016, (*Id.* ECF No. 42), followed by Debtor's reply on November 8, 2016, (*Id.* ECF No. 44) and Defendant's reply thereto on November 16, 2016 (*Id.* ECF No. 45). Following the hearing of this matter on January 10, 2016, counsel for the Debtor was granted the opportunity to file a supplemental brief with this Court. On January 17, 2017, counsel for the Debtor filed a supplemental statement in support of its motion for summary judgment and the Court took the matter under advisement.

*28 U.S.C. § 157(a)* allows a district court to refer "all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." Pursuant to the Standing Order of Reference, Misc. Order No. 84-30, the District Court for the Western District of Tennessee has referred all bankruptcy cases and adversary proceedings to this Court.

## I. CHAPTER 11 PROCEEDINGS

VML Company, LLC, a Delaware Corporation d/b/a/ Valley Manufacturing and Logistics Company, LLC, (herinafter "Debtor"), filed a voluntary, but incomplete, Chapter 11 petition on April 24, 2009. On May 21, 2009, the Debtor filed the **[*3]** required schedules and statements and on May 22, 2009, the Debtor filed its disclosure statement.

On June 30, 2009, Defendant filed an unsecured, nonpriority claim in the Debtor's case in the amount of $4,647,143.83. On July 2, 2009, the Order Confirming Plan of Reorganization was signed by the Court and docketed. The plan provided that Class 6, consisting of unsecured, nonpriority claims, was impaired, and that Class 6 claims would be paid on a pro rata basis from excess funds from the sale of assets of the Debtor after payment of Class 2 and 3 in full. At the contested confirmation hearing, the Debtor announced a consensual resolution of the Unsecured Creditors' Committee's ("Committee's") objection that granted the Committee an interest in any preference actions which might have existed, allowed for the establishment of a trust to hold any such recoveries in escrow, and provided for a pro rata distribution to Class 6 from any recovered funds, in addition to future payments from the entity purchasing substantially all of the Debtor's assets if the Committee's recoveries did not reach a certain threshold percentage of total Class 6 claims. This agreement was memorialized in the order **[*4]** confirming the Debtor's plan entered in the Debtor's Chapter 11 case. The order confirming Debtor's plan did not address post-petition turnover actions under *11 U.S.C. § 542* or collections of accounts receivable. The Committee's motion for final disbursement alleged that the holders of allowed unsecured claims ultimately received a .005% dividend on allowed claims, and that "[t]he Committee does not expect to receive any further additional funds to be available to pay unsecured creditors." Chapter 11 Case No. 09-24507, ECF No. 255 at 2.

As set forth below, neither the plan or disclosure statement mentions actions for turnover, *11 U.S.C. § 542*, or the collection of post-petition accounts receivable owed to the Debtor. The amended disclosure statement indicates that "the Reorganized Debtor will continue under Newco and that the Channel Plant will operate and liquate [sic] under the Chief Restructuring Officer until sale or auction of the remaining assets as quickly as possible." Chapter 11 Case No. 09-24507, ECF No. 88 at 30. There is no mention in the record of the Debtor's intentions with regard to post-petition accounts receivable generated during the period between the filing of the Debtor's Chapter 11 petition **[*5]** and the closing of the Channel Plant.

It should also be noted that the Court granted approval of post-petition financing for the Debtor which granted Regions, as the Debtor's post-petition lender, a lien over all property and assets of the Debtor, and its bankruptcy estate, including "causes of action under chapter 5 of the bankruptcy code," subject to the Committee's preference action carveout. Chapter 11 Case No. 09-24507, ECF No. 34 at 10.

Debtor asserts that the following provisions of the Plan of Reorganization are relevant to these matters:

> **F.4. Preservation of Causes of Action**. In accordance with *§1123(b)(3) of the Bankruptcy Code* and except as otherwise provided in this Plan, the Reorganized Debtor will retain and may (but shall not be required to) enforce all claims and causes of action of any sort against any party. Debtor or the Reorganized Debtor, in its sole and absolute discretion, will determine whether to bring, settle, release, compromise, or enforce such claims or causes of action (or decline to do any of the foregoing), and will not be required to seek further approval of the Bankruptcy Court for such action. The Reorganized Debtor or any successors may pursue such litigation claims in accordance with **[*6]** the best interest of the Reorganized Debtor or any successors holding such rights of action.
>
> **I. Preservation of Rights of Action**. Except as otherwise expressly provided herein, any rights or causes of action accruing to the Debtor or its Estate including, without limitation, any rights or causes of action pursuant to *11 U.S.C. §§ 544 through 550*, inclusive, or any other statute or legal theory shall become assets of, and vest in, the Debtor.
>
> **M. Retention of Jurisdiction**. Following Confirmation of this Plan, the Bankruptcy Court shall retain such jurisdiction as is legally permissible after Confirmation, including, without limitation, for the following purposes:
> 1. To determine the allowability, classification, or priority of claims and interests upon an objection by the Reorganized Debtor or by other parties in interest with standing to bring such objections or proceeding;
>
> 2. To construe or to take any action to enforce and execute this Plan, the Confirmation Order, or any other Order of the Bankruptcy Court, issue such Orders as may be necessary for the implementation, execution, performance, and consummation of this Plan and all matters referred to herein, and determine all matters that may be pending before the **[*7]** Bankruptcy Court in the Reorganization Case on or before the Effective Date with respect to any entity;
> 3. To determine any and all applications for allowance of compensation and expense reimbursement of professionals for services rendered in periods commencing on or before the Effective Date;
> 4. To determine any other request for payment of administrative expenses;
> 5. To resolve any dispute regarding the implementation, execution, performance, consummation, or interpretation of this Plan;

6. To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the Effective Date and the allowance of any claims resulting therefrom;

7. To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted prior to the entry of the Confirmation Order;

8. To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

9. To modify this Plan pursuant to *11 U.S.C. § 1127*, to remedy any apparent defect or omission in this Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purposes;

Chapter 11 Case No. 09-24507, Adv. Proc. No. 09-00400, **[*8]** ECF No. 44 at 4-5, Chapter 11 Case No. 09-24507, Plan of Reorg. ECF No. 50 at 14-15.

On August 19, 2009, Debtor filed this complaint for violation of the automatic stay, turnover of property and damages, and on October 5, 2009, Defendant filed its answer in response. Adv. Proc. No. 09-00400, ECF No. 10. Following discovery and an unsuccessful attempt at mediation, Debtor filed a motion for partial summary judgment on June 23, 2016, and an accompanying memorandum which included, among other supporting documents, a statement of undisputed material facts. Adv. Proc. No. 09-00400, ECF No. 32-2. Defendant filed an objection to Debtor's motion for summary judgment that also included a response to Debtor's statement of undisputed material facts. *Id.*, ECF No. 41-1. Debtor filed a reply to Defendant's objection, followed by Defendant's sur-reply. After oral arguments were held on the motion for summary judgment, Debtor filed a supplemental statement in support of its motion for summary judgment. These matters are now fully briefed.

## II. UNDISPUTED FACTS

From the Debtor's statement of undisputed material facts and Defendant's reply thereto, the Court finds that the parties agree that the following **[*9]** facts are not in dispute:

VML was a contract manufacturer of liquid and bar soap. VML had its principal places of business at 2070 Channel Avenue, Memphis, Tennessee 38103 (the "Channel Plant") and 384 E. Brooks Road, Memphis, Tennessee 38109. On June 1, 2007, Debtor and Defendant entered into a Master Supply Agreement ("MSA"). Under the MSA, Debtor made payments to Meguiar's of approximately $6,000,000. On November 14, 2008, Debtor and Defendant entered into a Product Processing Agreement ("PPA") and Amended and Restated Note ("Note"). *See* Ex. 2 and 4 to Defendant's Answer (Adv. Proc. No. 09-00400, ECF No. 10). The Note provided that part of the payments under the Note would be made by way of a reduction in principal and interest equal to $.045 of the invoice cost for every unit of product that was processed. (The PPA provided the methodology by which the Debtor was to make products for the Defendant, and, the Court notes, provided a means for the parties to attempt to resolve any disputes arising from or relating to a product or the PPA. Any claims or disputes are to be governed by the laws of California. Further, the multi-step resolution process consists of (1) a negotiation request; **[*10]** (2) meeting to discuss the negotiation request; (3) non-binding mediation; and finally, as a last resort, the parties may commence litigation only in a federal or state court of competent jurisdiction in Orange County, California).

Debtor filed a petition under Chapter 11 in the Western District of Tennessee on April 24, 2009. This Court confirmed Debtor's plan of reorganization on July 2, 2009. On June 18, 2009, an order was

docketed in the Debtor's Chapter 11 case, which approved the employment of James J. Sherman ("Sherman") as the Debtor's Chief Restructuring Officer. Mr. Sherman was reappointed on June 21, 2016.

The parties further agree that on July 17, 2009, Tim Treadwell ("Treadwell"), an employee of Meguiar's, sent Sherman an email which stated the following: "Please review the attached spreadsheet and then call me to discuss. The intent is to verify the outstanding invoices, credit due calculations, semi-finished inventory, quality issue and RM inventory levels. For now, lets [sic] wait for the finished good QC tests to progress before discussing this information (want to get this out in the open but also don't want to waste any time should the quality be okay)." The attached [*11] spreadsheet reflected that the "Total amount of unpaid invoices submitted to Meguiar's: $317,189.54," net the "total invoice credits due Meguiar's: $49,037.81" was equal to the "Total amount due VML prior to quality deductions: $232,989.81." The spreadsheet also said, "Quality issues - needs further analysis and QC testing (listed at delivered cost of RM's used.)" The last line of the spreadsheet states: "Total of quality issues: $24,690.96." Adv. Proc. No. 09-00400, ECF No. 32-2, 41-1.

The parties do not agree on any additional facts. The Court notes that the docket in this case reflects that the complaint is brought by the reorganized Debtor against the holder of a large prepetition claim. Within its amended disclosure statement, while not mentioning the Defendant by name, the Debtor stated that "The announced exit of the 'Channel Plant's' largest customer at the end of June 2009, the lack of prospects to replace this volume on a short term basis, and the resulting operating and cash losses that would occur by attempting to sustain this business after the customer exit, all present a significant hurdle to a successful 'Plan of Reorganization.'" The disclosure statement also stated [*12] that, "The Debtor proposes to operate the 'Channel Plant' until the exit of the largest customer." Chapter 11 Case No. 09-24507, ECF No. 88 at 17. The Debtor's plan stated that Debtor anticipated selling its bar soap line to a newly created entity and paying administrative claims, paying the secured claim of its largest lender, and paying any additional funds to priority unsecured creditors. According to the Debtor's initially proposed plan, general unsecured creditors, those not entitled to priority, were to be paid on a pro rata basis from any excess funds from the sale of Debtor's assets.

### III. ANALYSIS

Federal Rule of Civil Procedure 56(a) is made applicable to adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, which states that the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. "A genuine issue of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' . . .When considering a motion for summary judgment, we must draw all reasonable inferences in favor of the nonmoving party." Yeschick v. Mineta, 675 F.3d 622, 632 (6th Cir. 2012)(citations omitted). "At the summary judgment stage, the judge's function is not himself [*13] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The moving party has the initial burden to demonstrate that no genuine issue as to any material fact exists, and that it is entitled to a judgment as a matter of law. If the moving party meets its burden, the nonmoving party then must present evidence by which the trier of fact could reasonably find for the nonmovant. It is not the court's duty to search the record to establish that there is no genuine issue of material fact, rather, to prevail on summary judgment, the nonmoving party must bring to the court's

attention the parts of the record that show the existence of a genuine issue of material fact. *See, e.g.*, Tyson v. Hunt (In re Tyson), 450 B.R. 754, 762 (Bankr. W.D. Tenn. 2011)(citations omitted).

After reviewing the pleadings in this adversary proceeding, the record of Debtor's Chapter 11 case, and the arguments of counsel, the Court has determined that the Debtor has not met its burden to establish that it is entitled to summary judgment on Count I. Further, the facts that are not in dispute show that the Debtor cannot prevail on Count I of the complaint because the Debtor has alleged that the Defendant effectuated a setoff **[*14]** during a time period in which the automatic stay was not in effect. Further, Court lacks jurisdiction to hear Count II of Debtor's Complaint due to the res judicata effect of the Debtor's confirmed plan. Even if the Court had jurisdiction over Count II, Debtor is attempting to use 11 U.S.C. § 542 to impermissibly litigate a contract dispute. As such the Court will grant summary judgment on behalf of the Defendant as to Count I and Count II of Debtor's complaint.

### A. SETOFF AS VIOLATION OF THE AUTOMATIC STAY (COUNT I)

Debtor's complaint alleges that Defendant setoff outstanding post-petition debt against amounts that Debtor owed Defendant, pre-petition, under the Note. Debtor alleges that Defendant did not move the Court for relief from the automatic stay of *11 U.S.C. § 362* in order to do so. Debtor's complaint alleges that Defendant violated *11 U.S.C. § 362(a)*...which provides that the filing of a bankruptcy petition operates as a stay of... "(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;...and (7) the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor...." **[*15]**

Debtor's memorandum in support of its motion for summary judgment also alleges that Defendant violated *11 U.S.C. § 362(a)(6)*, which stays "any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case under this title."

Defendant alleges that genuine issues of fact exist as to whether a setoff occurred, that there was no automatic stay in effect at the time Debtor alleges the setoff occurred, and, alternatively, Defendant has a right to recoupment which is not subject to the automatic stay and which would greatly exceed Debtor's claim.

Both Debtor's complaint and Debtor's motion for summary judgment allege that Defendant effectuated this post-petition setoff on or about July 17, 2009. As set forth in the statement of facts contained within the memorandum in support of Debtor's motion for partial summary judgment, Debtor alleges, "On or about July 17, 2009, Defendant's agent sent VML's Chief Restructuring Officer a spreadsheet showing credits that Defendant claimed it was owed pursuant to the Amended and Restated Note, on both paid and unpaid invoices submitted to Defendant by VML for postpetition services, and no further post-petition invoices have been paid **[*16]** by Defendant. [Statement of Facts, at ¶ 13]. Prior to effectuating this setoff, this Court's electronic docket indicates that Defendant did not move the Court for relief from the automatic stay of *11 U.S.C. § 362*." The spreadsheet that was attached did not reference any pre-petition invoices or credits. At the hearing on the motion for partial summary judgment, Debtor's counsel argued that the setoff was "ongoing and did occur during the administrative period," and, "something was going on during the administrative period, clearly we did not discover it until after the administrative period had closed."

Debtor filed a supplemental statement in support of its motion for partial summary judgment that did not shed any light on what date, exactly, Debtor alleges the setoff occurred. Defendant alleges that no setoff occurred and, even if it did, that it occurred after the confirmation date and thus no automatic stay was in effect at the time.

The record is similarly devoid of facts supporting Debtor's calculation of the amount allegedly subject to setoff. The affidavit of Sherman, attached to the motion for summary judgment, did not assist the Court with determining what, if any, sum might be owed by Defendant [*17] to Debtor. The affidavit states,"Prior to the Petition Date, between September 2008 and April 2009, VML rendered contract manufacturing services for Defendant for which Defendant owes Plaintiff $438,529.14 in outstanding prepetition accounts receivables [sic] (see VML's Prepetition Receivables List, attached hereto as Exhibit D). This amount is net of all credits due Meguiar's pursuant to the various agreements between the parties." The affidavit further states: "In addition to the prepetition contract manufacturing services VML rendered for Defendant, after the Petition Date, between April 2009 and June 2009, VML also rendered postpetition contract manufacturing services for Defendant, for which Defendant owes VML $325,865.54 in outstanding post-petition accounts receivables (see VML's Postpetition Receivables List, attached hereto as Exhibit E)." Adv. Proc. No. 09-00400, ECF No. 32-3 at 3.

In examining the attached pre-petition and post-petition receivables list, the Court noted at the hearing on the motion for summary judgment, that both lists were dated "07/11/09." Neither party could explain to the Court what had occurred on that date or why it was present at the top of the lists. [*18] Counsel for Debtor surmised that it might not be a date but rather an account number. Further, the "DATE" column that was next to the invoice number was also unclear: several of the dates on the pre-petition receivables list were actually after the petition filing date of April 24, 2009. Further, every "DATE" on the post-petition receivables list was also post-confirmation, as well as post-petition, and also well after the Channel Plant, which generated the receivables in question, had allegedly shut down, on June 30, 2009. Rather than providing the Court with undisputed facts as to the amounts owed, the receivables list demonstrated that many disputed facts remain as to the timing and nature of the disputed invoices that form the basis of Debtor's claims.

Debtor also supported its motion for summary judgment with additional affidavits from Sherman. *See* Adv. Proc. No. 09-00400; ECF Nos. 32-3, 44-1, and 47-1. Sherman's supplemental affidavit indicates that Defendant owes Debtor for services rendered both pre-petition and post-petition/ pre-confirmation. In addition, Sherman indicated that Debtor's bankruptcy counsel provided him with a letter from Defendant's counsel, dated June 19, [*19] 2009, which reserves the right of setoff which Defendant has as to both pre-petition and post-petition invoices. The letter also references two attachments which explain Defendant's position in detail. The attachments were not included in the papers filed with the Court. Adv. Proc. No. 09-00400; ECF No. 44-1 at 4-5.

In support of its response to Debtor's statement of undisputed facts, Defendant attached the declaration of Treadwell, who was the project manager for Defendant and was familiar with the contractual arrangements between the Defendant and Debtor. Treadwell sent an e-mail and attached spreadsheet, dated July 17, 2009, post-confirmation, which Debtor alleged was the final step in effectuating the setoff. Treadwell's declaration stated that it was not his intent to effect a setoff between the parties, but rather he was attempting to reach an agreement on the credits that Meguiar's was entitled to, under the PPA and Note. He further stated that the reconciliation request was not a demand for payment or a definitive statement of the sums owed. *See* Adv. Case No. 09-00400; ECF No. 41-2. Defendant also attached to its

response to Debtor's statement of undisputed facts the declaration **[*20]** of Krystle Pletcher, the Defendant's finance manager, who stated that the Defendant's books and records still reflect that an outstanding payable of $325,561.17 is owed to VML Company, LLC, and that Defendant has not taken any credits or offsets against that amount. *See* Adv. Case No. 09-00400; ECF No. 41-3.

As explained by the Supreme Court, "[t]he right of setoff (also called 'offset') allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A' . . . Although no federal right of setoff is created by the Bankruptcy Code, *11 U.S.C. § 553(a)* provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, at 18-19, 116 S.Ct. 286, 133 L. Ed. 2d 258 (1995)*(citation omitted)(noting that the petitioner had a state law right to setoff a defaulted loan against a checking account but that the respondent's bankruptcy filing stayed the exercise of that right under *§ 362(a)*). The requirements which are necessary for a court to find that a setoff occurred are: (1) a decision to effectuate a setoff, (2) some action accomplishing the setoff, and (3) a recording of the setoff. *Id. at 19*. One limitation, as pointed out by the Debtor, to the right **[*21]** of setoff is that obligations that arise pre-petition may not be setoff against countervailing obligations that arise post-petition. *Gordon Sel-Way, Inc. v. U.S. (In re Gordon Sel-Way, Inc.) 270 F.3d 280 (6th Cir. 2001)*.

While the contractual relationship between the parties may have supported a right of setoff between the Defendant and Debtor, if a setoff occurred, the Court has not been shown sufficient facts to determine, at a minimum, an action effecting a setoff, the character of the obligations (i.e. pre-or post-petition; pre-or post-confirmation) that were allegedly setoff against one another, and the amount of the mutual obligations which were allegedly setoff. Debtor's supporting affidavits appear to demonstrate that issues of fact exist as to the disputed obligations and invoices rather than showing the Court that no genuine issue of material fact exists, as is the Debtor's burden.

To further the confusion regarding Debtor's setoff allegations, Debtor alleged in its complaint and motion for summary judgment that the setoff occurred post-confirmation, on July 17, 2009. "Defendant effectuated Setoff #1 (pre-petition debt owed to Debtor) and Setoff #2 (post-petition debt owed to Debtor) after the Confirmation Date, as evidenced by, among other things, email correspondence **[*22]** Defendant's authorized agent sent to VML's Chief Restructuring Officer on or about July 17, 2009." Adv. Proc. No. 09-00400, ECF No. 1, Compl. at 6. At oral argument, Debtor's counsel stated that the setoff was "ongoing and occurred during the administrative period." Debtor has not filed an amended complaint to reflect that the setoff occurred pre-confirmation.

As the party moving for summary judgment, Debtor has the burden of showing that no element of material fact is in dispute as to its claim that Defendant effectuated a setoff in violation of the automatic stay. *See R.S.W.W., Inc. v. City of Keego Harbor, 397 F.3d 427, 433 (6th Cir. 2005)*(citation omitted). As set forth above, there are numerous facts in dispute as to Debtor's claims that a setoff occurred and the Court determines that summary judgment is not appropriate as to Debtor's allegations that a setoff was effectuated by Defendant in violation of the automatic stay of *11 U.S.C. § 362*.

At the hearing on Debtor's motion for summary judgment, the parties agreed that the only turnover claims properly before the Court are Debtor's claims for turnover of post-petition accounts receivable because the Debtor only alleged entitlement to turnover of the post-petition receivables in its motion for summary judgment and **[*23]** memorandum in support of the motion. Debtor has not properly moved for summary judgment on a claim for turnover of pre-petition receivables and has not amended its pleadings to seek

such relief. To the extent that Debtor seeks turnover of prepetition receivables, the Court finds that the Debtor is bound by the confirmed plan as more fully explained below.

## B. TURNOVER PURSUANT TO 11 U.S.C. § 542(b)(COUNT II)

Count II of Debtor's complaint states that the pre-petition and post-petition receivables owed by Defendant are property of the estate and demands turnover of the property pursuant to 11 U.S.C. § 542(b). Defendant alleges that Debtor lacks standing to assert this claim because the post-petition receivables are no longer property of the estate because Debtor's plan was confirmed and so the Debtor's claim does not fall within the enumerated types of debt owed and subject to turnover pursuant to 11 U.S.C. § 542(b). Defendant further argues that even if the Court finds that Debtor has a claim to any accounts receivable which are estate property, this Court lacks subject matter jurisdiction to adjudicate this dispute because the Debtor is bound by the terms of the confirmed plan of reorganization, i.e., that the confirmation order entered [*24] in this case on July 2, 2009, bars the claims brought by the Debtor on the basis of res judicata. Defendants also allege that the plan did not provide for this Court to retain jurisdiction over claims for turnover of estate property nor did it preserve the Debtor's standing to bring a post confirmation action under 11 U.S.C. §1123(b)(3).

11 U.S.C. § 1141(a), in pertinent part, provides that the provisions of a confirmed plan bind the Debtor and any creditor, whether or not the creditor's claim is impaired under the plan and whether or not the creditor has accepted the plan. § 1141(b) provides that, except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

11 U.S.C. § 542 provides, in pertinent part, that "(a)... [A]n entity...in possession, during the case, of property that the trustee may use, sell, or lease...shall deliver to the trustee,...such property or the value of such property... and (b)...[A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against [*25] a claim against the debtor."

Within the Sixth Circuit, "it is well recognized...that confirmation of a Chapter 11 plan has res judicata effect with respect to causes of action that became assets of the Chapter 11 estate. As a general rule, the [c]onfirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings. Such confirmation by a bankruptcy court has the effect of judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings." Elk Horn Coal Company, LLC v. Conveyor Manufacturing & Supply, Inc., (In re Pen Holdings, Inc.), 316 B.R. 495, 498 (Bankr. M.D. Tenn. 2004)(alteration in original)(citations and emphasis omitted).

"A claim is barred by the res judicata effect of prior litigation if all of the following elements are present: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." Browning v. Levy, 283 F.3d 761, 771-772 (2002)(citations omitted). All of the elements of res judicata are present here. The Bankruptcy Court's confirmation order constitutes the final judgment in the bankruptcy [*26] proceedings. The Debtor and Defendant, at the time of plan confirmation, knew that there would be

outstanding post-petition invoices which could have been addressed in the disclosure statement, plan or confirmation order. These same invoices constitute the receivables which Debtor is now attempting to collect through this adversary proceeding. All of the elements necessary for the confirmation order entered in this case to have res judicata effect on the proceedings before the Court are present.

However, "an exception exists to the general rule that a confirmed Chapter 11 plan of reorganization precludes a debtor or related entity from advancing claims that were or should have been brought during the Chapter 11 proceeding...res judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding...it will bar litigation of claims not expressly reserved in the plan of reorganization or the order confirming the plan of reorganization." *Slone v. M2M International, Inc. (In re G-P Plastics, Inc.), 320 B.R. 861, 867-868 (E.D. Mich. 2005)* (internal citations omitted).

The means by which causes of action can be preserved by the reorganized Debtor is stated in *11 U.S.C. § 1123(b)(3)(A)* and *(B)* which states that a plan may provide for (A) the settlement or adjustment [*27] of any claim or interest belonging to the debtor or to the estate; or (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest... However, a general reservation of rights does not suffice to avoid res judicata. *§1123(b)(3)* constitutes a notice provision: the notice at issue is not notice to potential defendants, it is notice to creditors generally that there are assets yet to be liquidated that are being preserved for prosecution by the reorganized debtor or its designee. *In re Pen Holdings, 316 B.R. at 502 (Bankr. M.D. Tenn. 2004)*.

The language necessary for a plan of reorganization to preserve a particular claim or cause of action is not specified by 1123(b) and the Sixth Circuit Court of Appeals has not addressed what language is necessary to preserve turnover actions. The Sixth Circuit has made it clear that a "blanket reservation" of all claims or causes of action is not sufficient to defeat application of res judicata. *Browning v. Levy, 283 F.3d 761, 774 (6th Cir. 2002)*.

So this Court must determine what type of language would have put creditors on notice that the Debtor sought to pursue a significant post-petition receivable on behalf of the estate. Or as *Pen Holdings* states, "Did the reservation [*28] allow creditors to identify and evaluate the assets potentially available for distribution?" *In re Pen Holdings at 502*.

The bankruptcy court in *In re Crescent Resources, LLC, 455 B.R. 115 (Bankr. W.D. Tex. 2011)* found that language in the debtor's plan, which described the causes of action belonging to a litigation trust as, "[t]he Litigation Trust Assets shall include, but are not limited to, those Causes of Action arising under Chapter 5 of the Bankruptcy Code including those actions which could be brought by the Debtors under *§§ 544, 547, 548, 549, 550,* and *551* against any Person or Entity other than the Litigation Trust Excluded Parties," was specific and unequivocal enough to retain a turnover cause of action under *§ 542*. In that case, the bankruptcy court, based on the importance of notice to creditors, stated that to determine if plan language meets the specific and unequivocal requirement, the court should look to the plan *first*. If the plan language does not meet the specificity requirement, the court can look outside the plan to the disclosure statement to determine the expectation of creditors. Based on the facts of the case, including that the legal files to be turned over had been expressly transferred to the litigation trust in anticipation of the trust bringing claims against the Defendants, [*29] the court found that creditors were on notice that claims for turnover were anticipated by the plan. The Fifth Circuit Court of Appeals later confirmed the bankruptcy court's finding. The facts of the case before the Court, as well as the expectations of the general unsecured creditors, are very different.

Significantly, in this case, there was an active unsecured creditors committee (the "Committee") in place. The Committee resolved its previously filed emergency motion to convert the Debtor's case from Chapter 11 to Chapter 7 and its motion to set aside the final post-petition financing order by negotiating with the Debtor and Debtor's post-petition lender to receive the rights and proceeds to all avoidance actions under Chapter 5 of the Bankruptcy Code, as set forth in the order of confirmation. *See* Chapter 11 Case No. 09-24507, ECF No. 135 at 3.

During the administrative period of this Chapter 11, the Committee took the position that the post-petition lender's advances were secured by post-petition accounts receivable, and stated as much in their pleadings. (Chapter 11 Case No. 09-24507, ECF No. 67 at 1-2, Mot. to Expedite Hrg.). Had the Committee held the belief that a significant [*30] sum was available for distribution, the Court can only surmise that the Committee would have taken action with regard to the receivables, as it did in ensuring its rights in the avoidance actions.

This Court, however, is bound to apply the precedent set forth in *Browning v. Levy, 283 F.3d 761 (6th Cir. 2002)*. The language interpreted by the court in that case was located in the Chapter 11 debtor's disclosure statement and read as follows: "In accordance with *section 1123(b) of the Bankruptcy Code*, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under *section 542*, *543*, 544, 547, 548, *550*, or *553 of the Bankruptcy Code*." The debtor-in-possession's successor, NW Liquidating, Inc., argued that the above-language preserved claims for legal malpractice and breaches of duty under Ohio law against the debtor-in-possession's law firm. The Sixth Circuit found that all of the elements of res judicata were present which would preclude the successor from relitigating the claims against the law firm. In examining the language, the panel found that "NW's [the corporate successor's] blanket reservation was of little value to the bankruptcy court and the [*31] other parties to the bankruptcy proceeding because it did not enable the value of NW's claims to be taken into account in the disposition of the debtor's estate. Significantly, it neither names SSD nor states the factual basis for the reserved claims. We therefore conclude that NW's blanket reservation does not defeat the application of res judicata to its claims against SSD." *Browning at 775*.

Like the *Browning* case, the significant post-petition account receivable allegedly owed to Debtor by Defendant was not mentioned anywhere in the plan or disclosure statement. Further, despite the Debtor specifically reserving causes of action under every other provision of Chapter 5 of the bankruptcy code, the Debtor failed to list claims for turnover under *11 U.S.C. § 542* or post-petition claims generally.

Counsel for Debtor, at the hearing on this motion for partial summary judgment, indicated that, should the Court find that the Debtor was entitled to funds from Defendant, the funds would be distributed to Debtor's unsecured creditors. The Court's record reflects otherwise. On May 19, 2009, this Court signed a post-petition financing order which granted the post-petition lender a security interest in all of Debtor's post-petition [*32] accounts (as well as "causes of action under chapter 5 of the bankruptcy code"). There is nothing in the record to indicate that the post-petition lender was ever paid in full. It is difficult to see how the unsecured creditors would ever realize a distribution of these funds. *See* Chapter 11 Case No. 09-24507; ECF No. 34 at 5.

Further, the extent of the post-petition lender's interest in the Debtor's post-petition accounts receivable would serve to explain why any post-petition accounts receivable and any turnover actions to recover

post-petition receivables were blatantly absent from the Debtor's lengthy plan, disclosure statement and the confirmation order in this case.

Even though, unlike *Browning*, the causes of action before the Court are among the types of claims that are typically addressed in a bankruptcy case, which indicates that perhaps the language of reservation might need to be less detailed (for notice purposes) than language seeking to preserve a state law claim, for instance, this Court "measure[s] the words of reservation in the context of the case and the particular claims at issue." *IBM Southeast Employees Federal Credit Union v. Collins, 2008 U.S. Dist. LEXIS 86626, 2008 WL 4279554 at * 11 (M.D. Tenn. 2008)*. In doing so, the Court finds that the reservation language in the Debtor's plan, [*33] disclosure statement, and confirmation order is not sufficient to preserve a cause of action for turnover of post-petition accounts receivable.

Based on the precedent in this circuit and the res judicata effect of the Debtor's confirmed plan, the Court finds that the Debtor did not preserve its claim or cause of action for turnover of funds pursuant to *11 U.S.C. § 542* against the Defendant herein.

Even if the Debtor had sufficiently preserved a cause of action for turnover, other courts have held that in cases such as this one, where the amount to be turned over is subject to dispute, an action for turnover is improper. "It is settled law that the debtor cannot use the turnover provisions to liquidate contract disputes or otherwise demand assets whose title is in dispute." *Penthouse Media Group v. Guccione (In re General Media, Inc.), 335 B.R. 66 (Bankr. S.D.N.Y. 2005)*, citing *Hirsch v. Loondon S.S. Owners Mut. Life Ins. Ass'n Ltd (In re Seatrain Lines, Inc.), 198 B.R. 45, 50 (S.D.N.Y. 1996)*. See also, *Marlow v. Oakland Gin Co. Inc. (In re Julien Co.), 128 B.R. 987, 993 (W.D. Tenn. 1991)*. Further, "[t]he language of *§ 542(b)* . . .'matured, payable on demand, or payable on order' create[s] a strong textual inference that an action should be regarded as a turnover only when there is no legitimate dispute over what is owed the debtor." *Hassett v. BancOhio Nat'l Bank (In re CIS Corp.), 172 B.R. 748, 756 (S.D.N.Y. 1994)*. If an ownership dispute must be resolved before any relief can be ordered, the proceeding is a non-core replevin action under state law rather than a turnover action. [*34] *Id*. It is abundantly clear based on the record before the Court that the amount owed to the Debtor is in dispute and that this matter is, in reality, a contract dispute.

Defendant asserts that this Court lacks jurisdiction over this adversary proceeding based on the confirmation of the Debtor's confirmed plan. Debtor asserted at the hearing on the motion for summary judgment that the confirmed plan bestowed jurisdiction on the Court and, in accordance with the precedential effect of *Michigan Emp't Sec. Comm'n v. Wolverine Radio Co., (In re Wolverine Radio Co.), 930 F.2d 1132 (6th Cir. 1991)*, the Court has jurisdiction.

The Sixth Circuit has held that a bankruptcy court has jurisdiction to enforce the automatic stay and such a motion constitutes a core proceeding under *28 U.S.C. § 157(b)(2)*. *Amedisys, Inc., v. Nat'l Century Fin. Enter. Inc. (In re Nat'l Century Financial Enterprises, Inc.), 423 F.3d 567, 573-574 (6th Cir. 2005)*. The Court also retains jurisdiction to ensure that the provisions of the confirmed plan are adhered to. *In re Gordon Sel-Way, 270 F.3d 280, 288-289 (6th Cir. 2001)*. The automatic stay ceases to exist upon confirmation of a Chapter 11 plan. *In re Globokar, 375 B.R. 383, 385 (Bankr. N.D. Ohio 2007)*. Actions taken in violation of the automatic stay are voidable and will be voided absent limited equitable circumstances. *Easley v. Pettibone Mich. Corp., 990 F.2d 905, 911 (6th Cir. 1993)*. While Debtor has alleged that Defendant effectuated a setoff in violation of the automatic stay, Debtor has also alleged that

the setoff occurred on July 17, 2009, after confirmation of the Debtor's plan, when the automatic **[*35]** stay would have ceased to exist. *In re General Media at 75*.

Regardless of Debtor's arguments that this Court has jurisdiction pursuant to the confirmed plan, the "bankruptcy court's subject matter jurisdiction derives from *28 U.S.C. § 1334*, and not the terms of a confirmed plan." *Thickstun Brothers Equipment Co., Inc. v. Encompass Services Corp. (In re Thickstun Brothers Equipment Co., Inc.), 344 B.R. 515, 522 (B.A.P. 6th Cir. 2006)*. Further, "Under *28 U.S.C. § 1334*, district courts 'have original and exclusive jurisdiction of all cases under title 11,' and 'original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases [under] title 11.' *28 U.S.C. § 1334 (a) & (b)*. *28 U.S.C. § 157* then authorizes district courts to refer cases and proceedings falling within *§ 1334(a)* and *(b)* to the bankruptcy courts." *Equipment Finders, Inc. Of Tennessee v. Fireman's Fund Insurance Co., et al (In re Equipment Finders, Inc. of Tenn.), 473 B.R. 720, 727 (Bankr. M.D. Tenn. 2012)*. Subject matter jurisdiction is determined by *§ 1334* and *§ 157(b)* and *(c)* determines the bankruptcy court's authority to act once jurisdiction is established. Counsel for Debtor has pointed out that, within the Sixth Circuit, "for purposes of determining *section 1334(b)* jurisdiction, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy." *Id.*, citing *Michigan Emp't Sec. Comm'n v. Wolverine Radio Co., (In re Wolverine Radio Co.), 930 F.2d 1132, 1141 (6th Cir. 1991)*. Further, the test of whether a civil proceeding, including the adversary proceeding before this Court, is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered **[*36]** in bankruptcy. *Equipment Finders, Inc., at 729* (citations omitted).

However, as other bankruptcy courts within the Sixth Circuit have noted, a bankruptcy court's post-confirmation subject matter jurisdiction "is generally described as 'sharply reduced' since after confirmation the purpose of a bankruptcy case is mostly effectuated...In determining whether a bankruptcy court has post-confirmation jurisdiction over a matter, the court must first determine "that the matter [has] a close nexus to the bankruptcy plan or proceeding...[and] second, the plan must provide for the retention of jurisdiction over the dispute." *In re Ventilex USA, Inc., 509 B.R. 140, 143 (Bankr. S.D. Ohio 2014)*(citations omitted).

"'Related to' jurisdiction in the post confirmation period expands or contracts depending on the relationship between the post confirmation debtor and the defendant, the language of the confirmed plan and the impact the matter will have on the confirmed plan." *Equipment Finders, Inc. at 731*, and cases cited therein. In the *Equipment Finders* case, the Debtor sued two non-creditors on state law and contract claims six months after confirmation. The bankruptcy court found that the disputes arose between the parties prior to confirmation but were not referenced in either the plan or disclosure statement. Further, the **[*37]** amended plan revested property in the reorganized debtor and payments under the confirmed plan were dependent solely on the post-confirmation operations of the reorganized debtor, not upon the outcome of the disputes. The bankruptcy court found that the cause of action did not ask the court to interpret, construe, enforce or implement the plan. Further, the court found that no rights of any creditors under the confirmed plan would be effected by the outcome of the proceedings and thus, the adversary proceeding was beyond the bankruptcy court's subject matter jurisdiction.

The adversary proceeding before the Court is brought by the reorganized Debtor against the holder of a large pre-petition claim. Within its Amended Disclosure Statement, while not mentioning the Defendant by name, the Debtor indicated that "The announced exit of the 'Channel Plant's' largest customer at the end of June 2009, the lack of prospects to replace this volume on a short term basis, and the resulting

operating and cash losses that would occur by attempting to sustain this business after the customer exit, all present a significant hurdle to a successful 'Plan of Reorganization." The disclosure statement also **[*38]** indicated that, "The Debtor proposes to operate the 'Channel Plant' until the exit of the largest customer." Chapter 11 Case No. 09-24507, ECF No. 88 at 17. The Debtor, no doubt, anticipated continuing to generate invoices based on its ongoing post-petition work for the Defendant.

The plan makes it clear that the Debtor was sufficiently apprised of the fact that Debtor's contractual relationship with Defendant would terminate at the end of June 2009, and the Debtor's cash collateral orders make it clear that the Debtor's post-petition lender had a security interest in all of the Debtor's receivables generated during the post-petition and pre-confirmation time period.

Instead of preserving the Court's jurisdiction over post-petition claims and preserving the Debtor's right to bring any claims resulting from the post-petition or post-confirmation remains of the parties' contractual dealings, the plan did not address this court's jurisdiction or the Debtor's ability to bring claims for turnover of post-petition property in any way.

The post-petition receivables, not being addressed by the Debtor's disclosure statement, plan of reorganization, or confirmation order, could not be said to be **[*39]** "necessary for the implementation, execution, performance, and consummation of this Plan," or pertain to a "dispute regarding the implementation, execution, performance, consummation, or interpretation of this Plan," as alleged by the Debtor. *See* Chapter 11 Case No. 09-24507; Adv. Proc. No. 09-00400, ECF No. 44 at 4. The Court finds, therefore, that it does not have subject matter jurisdiction over the post-petition receivables which Debtor seeks to collect.

Debtor argued at the hearing on the motion for summary judgment that the Defendant's post-petition setoff violated the automatic stay because it occurred sometime during the administrative period. In its memorandum in support of the motion for summary judgment, Debtor stated that the setoff occurred "on or about July 17, 2009, after VML's petition was filed, and after the Confirmation Date." Chapter 11 Case No. 09-24507; Adv. Proc. No. 09-00400, ECF No. 32-1 at 8. Debtor alleges the setoff was effectuated via e-mail dated July 17, 2009, from Defendant's agent to Debtor's chief restructuring officer. *Id.* at 3; *See Citizens Bank of Maryland v. Strumpf, 516 U.S. 16, 19 116 S.Ct. 286, 289, 133 L. Ed. 2d 258 (1995)*(A setoff has not occurred until three steps have been taken: (i) a decision to effectuate a setoff, (ii) some action accomplishing **[*40]** the setoff, and (iii) a recording of the setoff)(citations omitted).

Debtor alleged throughout its pleadings and at the hearing of this motion that it continued to perform work up to June 30, 2009. Debtor's plan was confirmed two days later, on July 2, 2009. Defendant alleges that because of the trade terms that existed between the parties, (60 days), the date that the Channel plant closed, June 30, 2009, as well as the short administrative period of the Chapter 11 case (April 24, 2009 to July 2, 2009) there would have not been enough time to effectuate a post-petition and pre-confirmation setoff. Debtor has provided the Court with no facts that support its allegations that the setoff occurred while the automatic stay was in effect, instead Debtor's arguments contradict its own pleadings, which indicate that the alleged setoff occurred post-confirmation.

The Plan in this Chapter 11 Case was confirmed over seven (7) years ago. The Court has been shown no evidence that the plan's implementation, consummation, execution or administration was dependant on the post-petition receivables in question: instead, the post-petition receivables were not addressed in the plan,

disclosure statement **[\*41]** or confirmation order. *See, e.g. In re Thickstun Brothers at 521*. As such, this Court lacks subject matter jurisdiction over these proceedings.

This matter is before the Court on the motion for summary judgment filed by the Debtor. Defendant did not file a competing motion for summary judgment and yet the Court has found that Debtor cannot prevail on its turnover claim as a matter of law, having failed to preserve such cause of action in order to avoid the res judicata effect of the confirmed Chapter 11 plan. Because there is no material fact in dispute as to this issue, the Court can grant summary judgment for Defendants. By moving for summary judgment [the moving party] has invited an adjudication on the basis of undisputed facts, even in the absence of a cross-motion by [the nonmoving party]. See *Eckford-El v. Toombs, 760 F. Supp. 1267, 1272 (W.D. Mich. 1991)*. The Court is discouraged from granting summary judgment *sua sponte* without giving notice to the parties. *Hayes v. Equitable Energy Res. Co.,266 F.3d 560, 571-72 (6th Cir. 2001)*. However, when one party moves for summary judgment, that party is considered to have sufficient notice of the imminence of summary judgment in some form. Thus, when a party has moved for summary judgment, and the Court agrees that there is no genuine dispute of material fact, but believes that judgment as a matter **[\*42]** of law is appropriate for the non-moving party, the Court is free to so declare. *Markva v. Haveman, 168 F. Supp. 2d 695, 706-707 (E.D. Mich. 2001)*, citing Wright, Miller & Kane, Federal Practice & Procedure § 2720 at 346 (1998) and *Eckford-El v. Toombs at 1272*.

Even if the Court found that it had subject matter jurisdiction over this dispute, the undisputed facts show that the automatic stay was not in effect at the time the Debtor has alleged in its complaint that the impermissible setoff occurred, therefore no violation of the automatic stay could have occurred. Further, the undisputed facts show that turnover is improper in this case because the Debtor's pleadings indicate that this suit is an attempt to litigate a contract dispute before this Court and a claim for turnover is not proper.

Accordingly, the Court grants summary judgment for the Defendant as to Counts I and II of the Debtor's complaint and will enter a separate judgment accordingly.

**Dated: March 10, 2017**

**The following is SO ORDERED**:

/s/ George W. Emerson, Jr.

**George W. Emerson, Jr.**

**UNITED STATES BANKRUPTCY JUDGE**

End of Document