UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION at AKRON

| | |
|---|---|
| IN RE FIRSTENERGY SOLUTIONS CORP., ET AL.,[1] <br><br> Debtors | Case No. 18-50757-AMK <br><br> Chapter 11 <br><br> Honorable Alan M. Koschik |
| FIRSTENERGY SOLUTIONS CORP., <br><br> Plaintiff, <br><br> v. <br><br> BLUESTONE ENERGY SALES CORP., <br><br> Defendant. | Adversary Proceeding 18-5100 |

**FIRSTENERGY SOLUTIONS CORP.'S OPPOSITION
TO DEFENDANT'S MOTION TO WITHDRAW THE REFERENCE**

Plaintiff FirstEnergy Solutions Corp. ("FES" or "Plaintiff"),[2] a debtor in the above-captioned chapter 11 case, through its undersigned counsel, respectfully submits this memorandum in opposition to Defendant's Motion to Withdraw the Reference, [Dkt. No. 23]

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage L.L.C. (6928), case no. 18-50764. The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

[2] Terms used but not otherwise defined herein have the meanings given to them in the Complaint in the above-captioned adversary proceeding.

1

(the "Motion"), filed by Bluestone Energy Sales Corp. ("Bluestone" or "Defendant") on June 3, 2019.

## PRELIMINARY STATEMENT

Bluestone's Motion to withdraw the reference is premature and unwarranted at this stage. Bluestone's argument in favor of withdrawing the reference boils down to its contention that at least one of FES's two claims will ultimately require trial by jury in a district court. Case law is clear that this does not suffice to show cause to withdraw the reference under these circumstances, or at this stage of the adversary proceeding. Accordingly, Bluestone fails to satisfy its burden to show "cause" why the reference should be withdrawn.

This proceeding involves a straightforward dispute between the parties that is well suited for determination on summary judgment by the United States Bankruptcy Court for the Northern District of Ohio, Eastern Division (the "Bankruptcy Court") which has been overseeing the case and is familiar with the parties and the dispute. Should that happen, there will be no need for any district court ever to consider this case. Even in the event that trial by a district court is ultimately required (which is unlikely, given the nature of the claims), case law is clear that Bluestone has not met its burden to show cause for withdrawal of the reference at this stage. Courts routinely find that the reference should not be withdrawn until claims are trial-ready. This doctrine serves to promote judicial efficiency, protect debtor and creditor resources, prevent forum shopping, and promote uniformity in bankruptcy administration and expedite the bankruptcy process. All of those considerations demand that Bluestone's Motion be denied here.

## FACTUAL BACKGROUND

The facts of this case are simple. The parties agree that on October 10, 2016, Bluestone and FES entered into a Coal Purchase Agreement (the "Agreement"), under which

Bluestone would purchase from FES 130,771 tons of coal (the "Purchased Tons") that Debtor FirstEnergy Generation, LLC ("FG") previously purchased from Bluestone. (Compl. ¶ 7; Compl. Ex. A § 1 [Dkt. No. 1].) The Purchased Tons were located at a stockpile on Bluestone's property. (Compl. ¶ 8.) Effectively, Bluestone agreed to sell the stockpiled coal to third parties and to pay FES for such sold-coal until February 28, 2017; at that point, Bluestone would simply pay FES a final payment for any coal remaining in the stockpile at a rate of $40 per ton. (Compl. ¶¶ 9–11; Compl. Ex. A §§ 2, 4.) By letter dated March 2, 2017, Bluestone confirmed that 77,059.94 tons of coal remained at the stockpile (the "Remaining Tons"). (Compl. ¶ 12; Compl. Ex. B.)

Under the Agreement, Bluestone was obliged to pay $3,082,397.60 for the Remaining Tons (i.e., $40 per ton x 77,059.94 tons) by March 7, 2017 (the "Final Payment"). (Compl. ¶ 15; Compl. Ex. A §§ 2, 4.) Bluestone however, did not make the Final Payment when due and continues to retain the Final Payment owing to FES. (Compl. ¶¶ 16–17, 20.)

Bluestone admits that it is party to the Agreement, admits that the Agreement terms "speak for themselves," and admits that the coal stockpile was on its property. (Answer ¶¶ 7–11 [Dkt. No. 22].) Further, in addition to Bluestone's March 2, 2017 letter in which it stated that 77,059.94 tons of the coal remained, *see* Compl. Ex. B, Bluestone also submitted in connection with a prior motion other contemporaneous communications showing that the parties understood that 77,059.94 tons of the coal remained on Bluestone's property and that Bluestone owed FES $3,082,397.60. (Def. Mot. to Dismiss, Ex. 5 [Dkt. No. 7].)

FES commenced this adversary proceeding in the Bankruptcy Court to recover the improperly withheld Final Payment. FES asserted one claim for turnover of estate property under section 542 of the Bankruptcy Code (the "Turnover Claim"), and one claim for breach of

contract (the "Breach of Contract Claim"). (Compl. ¶¶ 21–33.) Bluestone moved to dismiss only the Turnover Claim, arguing that the Final Payment was not property of the estate. (*See generally*, Def. Mot. to Dismiss.) While Bluestone argued that the claim was "disputed," Bluestone notably did not even try to move to dismiss the Breach of Contract Claim. (*Id.*)

Following briefing and oral argument, the Court denied Bluestone's motion to dismiss, finding the Turnover Claim adequately pled [*See* Dkt. No. 21]. Bluestone then answered the Complaint, and subsequently filed the subject Motion to withdraw the reference of the adversary proceeding to a United States District Court (the "District Court"). The adversary proceeding remains unstayed pending the motion to withdraw the reference, and the Bankruptcy Court entered an order confirming that "Discovery should have already commenced and should continue while the Motion [to withdraw the reference] is briefed in [the Bankruptcy Court] and while it is heard and considered by the District Court." (Order ¶ 1 [Dkt. No. 24].)

## ARGUMENT

Under 28 U.S.C. § 157(d), the "district court *may* withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on timely motion of any party, *for cause shown*."[3] (emphasis added).

"Cause" is not statutorily defined. Courts, however, have "acknowledged that the 'cause' requirement for permissive withdrawal reflects congressional intent to have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening policy." *Holland v. LTV Steel Co., Inc.*, 288 B.R. 770, 774 (N.D. Ohio 2002). Courts have developed a non-exhaustive list of factors to consider in determining whether cause exists. *Corzin v. Harvey (In re Commercial Maint. & Repair, Inc.)*, No. 5:06-MC-46, U.S. Dist. LEXIS 7140, at *3 (N.D.

---

[3] Bluestone does not argue that withdrawal is mandatory under 28 U.S.C. § 157(d), nor would mandatory withdrawal be warranted, given that the dispute does not involve any claim under nonbankruptcy federal law.

4

Ohio Sept. 26, 2007). "Those include promoting judicial economy, uniformity in bankruptcy administration, reducing forum shopping and confusion, conserving debtor and creditor resources, expediting the bankruptcy process, whether a party has requested a jury trial, and whether the proceeding is core or non-core." *Id*. Furthermore, in applying these considerations, case law cautions that district courts should be mindful that "withdrawal of a reference is not intended to be an 'escape hatch' from bankruptcy court into district court" and thus courts should "grant such relief only in a limited class of proceedings." *Holland*, 288 B.R. at 772–73 (internal citation omitted).

Bluestone, as the moving party, bears the burden of demonstrating that the reference should be withdrawn. *In re Commercial Maint. & Repair, Inc.*, U.S. Dist. LEXIS 7140, at *3.

Bluestone has failed to carry its burden here, especially at this stage in this case. To the contrary, considerations of judicial economy, uniformity in bankruptcy administration, reducing forum shopping and confusion, conserving debtor and creditor resources, expediting the bankruptcy process, and the unlikely need for any jury trial, all militate in favor of the Bankruptcy Court retaining jurisdiction over this adversary proceeding in its entirety until such time as a jury trial may be required (in the unlikely event that occurs).

**I. Bluestone's Motion Is Premature Because the Core or Non-Core Nature of the Claims Has Not Been Determined.**

This adversary proceeding involves two claims: the Turnover Claim and the Breach of Contract claim. To date, the Bankruptcy Court has not ruled—indeed, it has not been asked to rule—upon whether either claim is core or non-core.

In its Motion, Bluestone now argues that the Breach of Contract Claim is non-core. While it argues that the claim may require resolution of findings of fact for which it

5

requested a jury, Bluestone does not argue that the Turnover Claim is non-core. Indeed, such an argument would likely be futile. 28 U.S.C. § 157(b)(2)(E) (listing "orders to turn over property of the estate" as a "[c]ore proceeding"); *see also French v. Butler (In re Brady)*, No. 12-34480, 2013 Bankr. LEXIS 3352, at *4 (Bankr. N.D. Ohio Aug. 16, 2013) (finding turnover action seeking recovery of a liquidated debt to be a core proceeding).

As Bluestone admits, "[c]ourts in this District often refuse to grant motions to withdraw the reference as premature when the Bankruptcy Court has not decided whether the matter is core or non-core." (Mot. at 4.) Thus, the court would be well within its discretion to find Bluestone's Motion premature on this basis alone. *See, e.g., In re Commercial Maint. & Repair, Inc.*, U.S. Dist. LEXIS 7140, at *5 (noting that the proper approach is to let the bankruptcy court decide if proceeding is core or non-core); *Angelucci v. Farmers Bank & Tr. Co. (In re Angelucci)*, No. 09-70-JMH, 2009 U.S. Dist. LEXIS 24233 (E.D. Ky. Mar. 23, 2009) (denying a motion to withdraw the reference as premature where the Bankruptcy Court had not yet determined whether claims were core or non-core).

**II.     The Matter Is Likely To Be Resolved Before Trial.**

Plaintiff anticipates that the dispute will likely be resolved before trial and the Bankruptcy Court will be able to enter a judgment and/or proposed findings at the summary judgment stage. For instance, Plaintiff anticipates that the Turnover Claim will be resolved quickly and efficiently on a motion for summary judgment given the clear language of the Agreement and Bluestone's admissions. As noted, Bluestone does not dispute the core nature of the Turnover Claim,[4] and it is beyond cavil that the claim may be determined on summary

---

[4] *See Anderson v. Countrywide Home Loans, Inc. (In re Anderson)*, 395 B.R. 7, 11 (E.D. Mich. 2008) ("[t]o state the obvious, the bankruptcy court exists to handle bankruptcy matters . . . [they

6

judgment. *See, e.g.*, *In re Greer*, 242 B.R. 389 (Bankr. N.D. Ohio 1999) (granting in part plaintiff trustee's summary judgment motion on turnover claim). Despite Bluestone's new, strategic assertions to the contrary, there is no real or credible dispute that Bluestone owes Plaintiff $3,082,397.60, given the plain language of the Agreement and Bluestone's contemporaneous admissions. (Compl., Ex. A, Ex. B; Def. Mot. to Dismiss Ex. 5.)[5] Indeed, there is no need even to establish liability (although that is easily established) when Bluestone acknowledged contemporaneously that the Final Payment was due to Plaintiff and the amount of coal in the stockpile. In the event that Plaintiff obtains relief on the Turnover Claim as expected, further litigation will not be required between the parties. Furthermore, if necessary, the Bankruptcy Court can also issue proposed findings and conclusions on the Breach of Contract claim on summary judgment, which would likewise assist both the parties and the Court. *See, e.g.*, *Apperson v. Bleckner* (*In re Batt*), No. 12-MC-009-C, 2012 U.S. Dist. LEXIS 134667, at *4–5 (W.D. Ky. Sept. 20, 2012) (denying motion to withdraw and noting that even if matters were non-core that did not justify withdrawal, "[j]udicial economy and the resources of the parties" would be best served by the bankruptcy court performing a first review of issues even if it could only propose findings and conclusions and that district court review "is an efficient use of the courts' and the parties' resources"). As such, considerations of judicial economy and conservation of party resources strongly favor delaying withdrawal of the reference at least through the summary judgment stage.

---

have] special expertise in this area of the law, and cases within this area of expertise should not be withdrawn without good cause").

[5] This opposition is not intended to, and does not, set forth all the reasons why summary judgment on the Turnover Claim is warranted. Plaintiff will make such arguments at the appropriate stage of the adversary proceeding.

7

### III. Withdrawal of the Reference Regarding FES's Breach of Contract Claim Is Premature at this Stage, and Should Be Denied.

Even if the Bankruptcy Court does not resolve the dispute in Plaintiff's favor at the summary judgment stage (which Plaintiff believes it will), considerations of judicial efficiency, uniformity in bankruptcy administration, reducing forum shopping and confusion, conserving debtor and creditor resources, and expediting the bankruptcy process, all still militate toward deferring withdrawal of the reference at this stage. Plaintiff does not dispute Bluestone's demand for a jury trial on its Breach of Contract Claim, or the propriety of conducting such trial in District Court (should these proceedings ever reach that stage). There are numerous pre-trial activities, however, between the present stage of the proceedings and any eventual trial, and the Bankruptcy Court is the appropriate court to handle those matters. Indeed, the District Court will likely be substantially assisted by permitting the Bankruptcy Court—which is familiar with the parties, has already ruled on dispositive motions, and has already begun to oversee discovery—to handle the pre-trial matters.

As numerous courts have found, the "better practice" is to allow a bankruptcy court to retain jurisdiction of all claims in an adversary proceeding—including those on which a party ultimately has a right to a jury trial in district court—until such claims are trial-ready. As one court stated, succinctly,

> Nonetheless, while Defendant's jury demand might well provide a basis for the eventual withdrawal of this proceeding from the purview of the Bankruptcy Court, this Court declines to do so at this juncture. The present motion was brought near the outset of this adversary proceeding, concurrently with Defendant's filing of its answer to the complaint. Thus, it remains possible that this case will not "reach trial, that it will require protracted discovery and court oversight before trial, or that the jury demand is without merit."
>
> Given these and other contingencies, this and other courts have reasoned that the better practice is to "permit[ ] the Bankruptcy Judge to manage the pre-trial phase of the litigation, with this Court revisiting the matter of withdrawal if and when the case is ready for trial."

8

*Gold v. Dobday Mfg. Co. (In re Solar Stamping & Mfg., LLC)*, No. 08-13433, 2008 U.S. Dist. LEXIS 68868, at *3–4 (E.D. Mich. Sept. 10, 2008) (internal citations omitted); *see also Logan v. Johnson*, No. 2:13-cv-156, 2013 U.S. Dist. LEXIS 55635, at *4–6 (S.D. Ohio Apr. 18, 2013) (motion for withdrawal denied as premature where it was too soon to evaluate whether plaintiff's case was likely to reach trial, discovery was underway in the bankruptcy court, and the bankruptcy court had familiarity with the case and the relation of the claims to ongoing bankruptcy matters); *Gucci v. Gucci*, No. 96 Civ. 8216, 1997 U.S. Dist. LEXIS 3001, at *2 (S.D.N.Y. Mar. 17, 1997) (denying motion to withdraw reference and noting that "[w]hile there is no question that this case must return to the District Court if and when there is a jury trial, at the present infant stage of the proceeding the issue of withdrawal is discretionary and turns largely on considerations of judicial economy"); *Sergent v. McKinstry*, 472 B.R. 387, 405 (E.D. Ky. 2012) (although plaintiff had a right to a jury trial on all her claims eventually, it was premature to withdraw the reference as there were still unfinished pretrial matters with which the bankruptcy court had greater familiarity); *In re Batt*, 2012 U.S. Dist. LEXIS 134667, at *6–7 (court found that existence of a jury demand was not cause to withdraw the reference at that stage and noting that "the Bankruptcy Court may retain jurisdiction . . . until it is established that a trial is actually necessary, or in other words, until the possibilities of summary judgment or other resolution have been extinguished"); *City Bank v. Compass Bank*, No. EP-11-MC-372-KC, 2011 U.S. Dist. LEXIS 129654, at *17 (W.D. Tex. Nov. 9, 2011) ("In summary, the factors suggest this Court should not withdraw this case from bankruptcy. Although this case may be a non-core proceeding and [plaintiff] may have a jury trial right, the availability of *de novo* review of dispositive orders and a jury trial in this Court ensures adherence with the Constitution while still allowing the bankruptcy court to efficiently manage the pre-trial proceedings"); *Turner v.*

9

*Boyle*, 425 B.R. 20, 25 (D. Me. 2010) ("[t]he early stages of the proceedings counsel against withdrawal because the Court does not know whether . . . protracted discovery under court oversight will be required").

This doctrine is well founded. Indeed, a "rule that would require a district court to withdraw a reference simply because a party is entitled to a jury trial, regardless of how far along toward trial a case may be, runs counter to the policy favoring judicial economy that underlies the statutory scheme governing the relationship between the district courts and bankruptcy courts." *Kenai Corp. v. Nat'l Union Fire Ins. Co. (In re Kena Corp.)*, 136 B.R. 59, 61 (S.D.N.Y. 1992) (noting that "[a]though withdrawal is an important component of this scheme, the court must employ it judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court.").

These considerations are so significant that some courts have required a party seeking pretrial withdrawal of the reference to establish that such withdrawal would be in the interests of judicial economy and that the moving party would be prejudiced by having the bankruptcy court oversee pretrial matters. *See, e.g.*, *Zond Minn. Constructors Co., LLC v. Marathon Elec. Mfg. Corp. (In re Enron Corp.)*, No. 04 Civ. 7950, 2005 U.S. Dist. LEXIS 2132, at *14 (S.D.N.Y. Feb. 14, 2005) ("A party that is seeking pretrial withdrawal of any proceeding, even a non-core one, must establish that withdrawal is in the interests of judicial economy and that it will be prejudiced by having the bankruptcy court oversee pretrial matters.") (internal citations and quotations omitted); *Bianco v. Hoehn (In re Gaston & Snow)*, 173 B.R. 302, 307 (S.D.N.Y. 1994) (denying motion to withdraw reference on non-core claim for which defendant requested jury trial, given that matter was not trial-ready and defendants had "failed to advance a substantial argument of prejudice if their motion is deferred until trial").

Bluestone could not conceivably make such a showing (and has not met its burden to show cause for withdrawal under any standard). Bluestone has not identified any reason that withdrawal is warranted at this stage of this case, or how it could be prejudiced if the Bankruptcy Court retains jurisdiction until the Breach of Contract Claim is trial-ready (should that day ever come). Here, the Bankruptcy Court is familiar with the adversary proceeding (which has been pending since December 2018) and the parties, having held lengthy oral argument, considered dispositive briefing, and ruled on Bluestone's motion to dismiss.[6] Moreover, the Bankruptcy Court has already begun to oversee discovery, which the parties will continue to conduct while the motion to withdraw is pending. The Bankruptcy Court is thus in the best position to oversee the completion of discovery and all other pre-trial matters. Likewise, withdrawing the case to the District Court may introduce delays, disrupt discovery, and potentially cause further depletion of debtor resources.

Further, a Bankruptcy Court's retention of claims until they are trial-ready serves to prevent forum shopping. *See, e.g.*, *In re Gaston & Snow*, 173 B.R. at 307 (courts must employ withdrawal "judiciously in order to prevent it from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court") (internal citations omitted); *Official Comm. of Unsecured Creditors of Tousa, Inc. v. Tech. Olympic, S.A. (In re Tousa, Inc.)*, No. 10-60206-MC-COHN, 2010 U.S. Dist. LEXIS 48570, at *12 (S.D. Fla. Apr. 19, 2010) (the "possibility" of forum shopping, even if remote, weighed in favor of denial of motion to withdraw reference). To the extent that Bluestone seeks to change its forum due to disappointment with the outcome on its motion to dismiss, such gamesmanship is an improper use of the permissive withdrawal doctrine.

---

[6] The Bankruptcy Court is particularly familiar with Plaintiff FES, whose chapter 11 case was filed on March 31, 2018.

## CONCLUSION

For all of the foregoing reasons, Plaintiff respectfully requests that the Court deny Bluestone's Motion and allow the Bankruptcy Court to oversee this adversary proceeding, in its entirety, unless and until one of the claims becomes trial-ready.

Dated: June 17, 2019

Respectfully submitted,

*/s/ Kate M. Bradley*
**BROUSE MCDOWELL LPA**
Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
388 South Main Street, Suite 500
Akron, OH 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
kbradley@brouse.com

- and -

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira Dizengoff (admitted *pro hac vice*)
Lisa Beckerman (admitted *pro hac vice*)
Abid Qureshi (admitted *pro hac vice*)
Joseph L. Sorkin (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
aqureshi@akingump.com
jsorkin@akingump.com

*Counsel for Plaintiff FES*