# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

|  |  |
|---|---|
| In re:<br><br>FIRSTENERGY SOLUTIONS CORP., *et al.*,[1]<br><br>      Debtors,<br><br>---<br><br>FIRSTENERGY SOLUTIONS CORP.,<br><br>      Plaintiff,<br><br>v.<br><br>BLUESTONE ENERGY SALES CORP.<br><br>      Defendant. | Chapter 11<br><br>Case No. 18-50757<br>(Jointly Administered)<br><br>Hon. Judge Alan M. Koschik<br><br>Adversary No. |

## COMPLAINT

Plaintiff FirstEnergy Solutions Corp. ("FES" or "Plaintiff"), a debtor in the above-captioned chapter 11 case, through its undersigned counsel, hereby files this Complaint for turnover and breach of contract against defendant Bluestone Energy Sales Corp. ("Bluestone" or "Defendant"), and in support thereof alleges as follows:

## PARTIES

1.      Plaintiff FES is an Ohio corporation with its principal place of business located at 341 White Pond Drive, Akron, Ohio 44320.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: FE Aircraft Leasing Corp. (9245), case no. 18-50759; FirstEnergy Generation, LLC ("FG") (0561), case no. 18-50762; FirstEnergy Generation Mansfield Unit 1 Corp. (5914), case no. 18-50763; FirstEnergy Nuclear Generation, LLC ("NG") (6394), case no. 18-50760; FirstEnergy Nuclear Operating Company ("FENOC") (1483), case no. 18-50761; FirstEnergy Solutions Corp. (0186); and Norton Energy Storage L.L.C. (6928), case no. 18-50764. The Debtors' address is: 341 White Pond Dr., Akron, OH 44320.

1

2.     On information and belief, Defendant Bluestone is a Virginia corporation with its principal place of business located at 302 S. Jefferson Street, Roanoke, Virginia 24011.

JURISDICTION AND VENUE

3.     The Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334. This adversary proceeding is a core proceeding under 28 U.S.C §§ 157(b)(2)(A) and 157(b)(2)(E), and this Court may enter a final order consistent with these statutes and Article III of the United States Constitution.

4.     Venue is proper in the Bankruptcy Court for the North District of Ohio pursuant to 28 U.S.C. §§ 1408-09.

BACKGROUND

5.     On March 31, 2018, each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes and are being jointly administered.

6.     The Debtors are presently operating their businesses and managing their property as debtors and debtors in possession pursuant to 1107(a) and 1108 of the Bankruptcy Code.

**The Coal Purchase Agreement**

7.     On October 10, 2016, Bluestone and FES entered into a Coal Purchase Agreement (the "Agreement"), attached hereto as Exhibit A, under which Bluestone and FES agreed that Bluestone would purchase from FES 130,771 tons of coal (the "Purchased Tons") that FirstEnergy Generation LLC ("FG") had previously purchased from Bluestone.

8.     The Purchased Tons were located at a stockpile on Bluestone's property, the Bent Mountain Operation located near Meta, Kentucky, held for FG's benefit, pursuant to a prior agreement between Bluestone and FG (as assignee of Monongahela Power Company).

2

9.     Effectively, Bluestone was to buy back the coal it had previously sold to FES,

agreeing to pay FES after Bluestone was able to sell the coal to third-party customers.

Regardless of whether Bluestone sold all of the Purchased Tons to third parties, it agreed to take

ownership of all the Purchased Tons left at the stockpile "in no event later than February 28,

2017." Agreement § 2.

10.     If any Purchased Tons remained in the stockpile as of February 28, 2017,

Bluestone was obligated to pay FES for the remaining Purchased Tons no later than March 7,

201[7] (the "Final Payment Date").[2]

11.     Pursuant to the terms of the Agreement, Bluestone agreed to pay $40 per ton for

the Purchased Tons.

**Bluestone Breaches the Agreement by Failing to Make the Final Payment**

12.     As of March 2, 2017, less than a week before the Final Payment Date, roughly

77,095.94 tons of coal of the Purchased Tons remained at the stockpile.

13.     In or around March 2, 2017, FES employee Ken Peace received a letter, attached

hereto as Exhibit B, from Bluestone's Vice President of Treasury, Summer Harrison (the "March

Letter").

14.     In the March Letter, Bluestone informed FES that Bluestone had a "significant

amount of coal in inventory that it [wa]s waiting to ship." Bluestone acknowledged that it

intended to deliver the remaining Purchased Tons, approximately 77,059.94 tons (the

"Remaining Tons"), to its customers by April 15, 2017.

15.     Accordingly, Bluestone acknowledged in the March Letter that it owed FES the

payment for the Remaining Tons under the Agreement and informed FES that payment would be

---

[2] The Agreement states that the final payment is due no later than March 7, 2016. This appears to be a scrivener's error. The logical reading of the Agreement establishes that the parties meant that payment was due on March 7, 2017.

3

delayed until it was able to ship the Remaining Tons to its customers. Specifically, under the terms of the Agreement, Bluestone was to pay FES $40 per ton for the Remaining Tons by March 7, 2017, for a total of $3,082,397.60 (the "Final Payment").

16.    Bluestone did not remit to FES the Final Payment on March 7, 2017, as it was required to do under the terms of the Agreement.

17.    Bluestone did not remit to FES the Final Payment on or around April 15, 2017, as it said it would do in the March Letter.

18.    On or around September 24, 2018, FES sent a letter, attached hereto as Exhibit C, reminding Bluestone of its contractual obligation to make the Final Payment (which Bluestone itself recognized in the March Letter) and requesting that Bluestone remit the Final Payment (the "September Letter").

19.    Bluestone did not respond to the September Letter.

20.    As of the date of this Complaint, Bluestone has not remitted to FES the Final Payment.

## FIRST CLAIM FOR RELIEF

## TURNOVER OF ESTATE PROPERTY PURSUANT TO 11 U.S.C. § 542(a)-(b)

21.    Plaintiff repeats, realleges, and incorporates by reference the allegations of paragraphs 1 through 20 as if fully set forth herein.

22.    Section 542(a) of the United States Bankruptcy Code provides, in pertinent part:

> [A]n entity, other than a custodian, in possession, custody, or control during the case, of property that the trustee may use, sell, or lease under section 363 of [the Bankruptcy Code], . . . shall deliver to the trustee, and account for, such property or the value of such property . . . .

11 U.S.C. § 542(a).

23.    Section 542(b) of the United States Bankruptcy Code provides, in pertinent part:

4

> [A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to . . . the trustee . . . .

11 U.S.C. § 542(b).

24.     Section 541 of the Bankruptcy Code provides that a debtor's estate is comprised of, subject to certain exceptions, "all legal or equitable interests of the debtor as of the commencement of the case." 11 U.S.C. § 541(a)(1).

25.     Bluestone is in possession, custody, or control of the Final Payment.

26.     Bluestone has, among other things, acknowledged through the March Letter that the Final Payment is property of Debtor FES, or, in the alternative, that the Final Payment is a matured debt, payable on demand, owed to the estate. However, Bluestone has failed to deliver the Final Payment to FES.

27.     Therefore, pursuant to 11 U.S.C. § 542(a)-(b), FES is entitled to the turnover of the Final Payment.

## SECOND CLAIM FOR RELIEF

## BREACH OF CONTRACT

28.     Plaintiff repeats, realleges, and incorporates by reference the allegations of paragraphs 1 through 20 as if fully set forth herein.

29.     Even if the Court finds that the Final Payment is not property of the estate or not a debt such that FES is not entitled to turnover pursuant to 11 U.S.C. § 542(a)-(b), Bluestone breached the Agreement, and FES is entitled to damages.

30.     FES contracted with Bluestone to receive $40 per ton for the Purchased Tons. In exchange, FES agreed to provide the Purchased Tons to Bluestone.

31.     FES fully and properly performed all conditions, covenants, and acts required to be performed on its part in accordance with the terms and conditions of the Agreement.

5

32. Bluestone breached its obligations under the Agreement by failing to remit the Final Payment to FES.

33. As a direct result of Bluestone's breach, FES has sustained damages at least in the amount of $3,082,397.60, the final amount due for the sale of the remaining 77,059.94 tons of coal multiplied by the contractual price of $40 per ton.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court grant the following relief against Defendant as to Counts I and II of this Complaint, and that the Court enter judgment against Defendant as follows:

1. requiring Defendant to turn over, pursuant to 11 U.S.C. § 542(a)-(b), the Final Payment;

2. in the alternative, finding that Defendant breached the Agreement by failing to remit to Plaintiff the Final Payment and thus awarding appropriate damages, at least in the amount of $3,082,397.60;

3. granting Plaintiff pre- and post-judgement interest; and

4. granting Plaintiff such other and further relief as the Court deems just and proper.

Dated:    December 13, 2018          Respectfully submitted,

/s/ Kate M. Bradley
**BROUSE MCDOWELL LPA**
Marc B. Merklin (0018195)
Kate M. Bradley (0074206)
388 South Main Street, Suite 500
Akron, OH 44311-4407
Telephone: (330) 535-5711
Facsimile: (330) 253-8601
mmerklin@brouse.com
kbradley@brouse.com

- and -

6

**AKIN GUMP STRAUSS HAUER & FELD LLP**
Ira Dizengoff (admitted *pro hac vice*)
Lisa Beckerman (admitted *pro hac vice*)
Joseph Sorkin (admitted *pro hac vice*)
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile: (212) 872-1002
idizengoff@akingump.com
lbeckerman@akingump.com
jsorkin@akingump.com

*Counsel for Plaintiff FES*

7

# Exhibit A

-----------------------------------

# COAL PURCHASE AGREEMENT

This Coal Purchase Agreement (the "Agreement") is made and entered into on October 10, 2016 ("Effective Date"), by and between Bluestone Energy Sales Corporation ("BESC"), 302 S. Jefferson Street, Roanoke, Virginia 24011 and FirstEnergy Solutions Corp ("FES"), an Ohio limited liability company. BESC and FES are sometimes referred to individually as a "Party" and collectively as the "Parties".

WHEREAS, BESC and FirstEnergy Generation LLC (FEG) (as assignee of Monongahela Power Company ("Mon Power")) entered into that certain Coal Sales Agreement dated May 1st, 2016 (the "Coal Agreement") wherein BESC delivered and FEG purchased 130,771 tons of coal that was delivered into a designated stockpile (the "Stockpile") for FEG's benefit (the "Purchased Tons");

WHEREAS, the Coal Agreement was terminated by mutual agreement of the Parties on September 21, 2016 ("Termination Agreement");

WHEREAS, FEG assigned the title to the coal in the Stockpile to FES;

WHEREAS, as a result of recent discussions between the Parties' respective representatives, the Parties now agree that BESC shall purchase the Purchased Tons from FES and FES shall pay to BESC $8.00 per ton, giving recognition to the activation and start-up expenses incurred by BESC in preparation for performance under the Coal Agreement;

NOW THEREFORE, in consideration of the mutual agreements contained herein, and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by the Parties; FES and BESC, intending to be legally bound, agree as follows:

1.    Purchase and Sale of Coal. Subject to the terms hereof FES shall supply to BESC, and BESC shall purchase from FES, the Purchased Tons.

2.    Delivery. The quantity of Purchased Tons shall be received by BESC ratably to the extent possible and the Parties shall cooperate in good faith to establish a delivery schedule that shall reasonably accommodate the receipt of the Purchased Tons by BESC. The Parties contemplate the Purchased Tons will be received by BESC on or before January 31, 2017, but in no event later than February 28, 2017. If any Purchased Tons remain in the Stockpile as of February 28, 2017, then BESC shall pay FES for all such remaining Purchased Tons no later than March 7, 2016. FES will not be charged any additional storage fee for any Purchased Tons remaining in the stockpile after December 31, 2016. All loading and transportation costs shall be for the account of BESC.

3.    Title. Title to the Purchased Tons shall at all times remain with FES until the Purchase Price is paid by BESC. Once the Purchase Price is paid, title shall transfer to BESC.

4.    Purchase Price. The price for the Purchased Tons shall be $40.00 per ton F.O.B. Stockpile. The Purchased Tons are being purchased on an As-Is Where-Is basis and FES makes no representations or warranties as to the quality of the Purchased Tons.

5.    Invoicing. BESC shall submit invoices to FES each Monday during the term of this Agreement based on BESC's weighted average data for all coal shipped from Monday through Sunday of the prior week. BESC will pay to FES the invoice amount on or before Friday of the week the invoice is tendered. If any Party in good faith

1

reasonably disputes an invoice, it shall provide a written explanation to the other Party, within ten (10) calendar days of receipt of the invoice, specifying in detail the basis for the dispute and pay any undisputed portion no later than the due date. Upon resolution of any dispute involving an invoice, any additional amount owing shall be paid with interest. If any Party fails to pay amounts under this Agreement when due, unless such amount is the subject of a dispute as provided above, or is excused by an event of force majeure, in addition to the rights and remedies provided in this Agreement, the aggrieved party shall have the right to suspend performance under this Agreement until such amounts (plus interest if applicable) have been paid, and/or exercise any remedy available at law or in equity to enforce payment of such amount due (plus interest if applicable).

6.    Weighing. The weights of the Purchase Tons received hereunder shall be determined by BESC by use of a scale system located at the Stockpile site. Weights taken in accordance with this Section shall be deemed accepted as correct (absent manifest error) and shall govern all invoicing and payments hereunder. Unless otherwise specified, the costs of weighing shall be for BESC's account.

7.    Activation and Start-Up Cost Mitigation. Upon execution of this Agreement, FES shall pay BESC $8.00 per ton for the Purchased Tons for a total sum  of One Million Forty Six Thousand One Hundred Sixty Eight Dollars ($1,046,168).

8.    Governing Law. This Agreement shall be governed by the laws of the State of West Virginia without regard to conflict-of-laws  principles.

9.    Counterparts. This Agreement may be executed in multiple counterparts, each of which shall be an original; but such counterparts shall constitute one and the same instrument.

     IN WITNESS WHEREOF, the Parties by their respective duly authorized representatives have executed this Agreement as of the Effective Date.


BLUESTONE ENERGY SALES                FIRSTENERGY SOLUTIONS CORP
CORPORATION

By: _____        By: _____

Its:   Executive Vice President       Its: VP Fuel & Unit Dispatch

Date:  10/10/2016                     Date: 10/10/2016


2

18-05100-amk   Doc 1-1   FILED 12/13/18   ENTERED 12/13/18 15:50:55   Page 3 of 3

# Exhibit B


**BLUESTONE
ENERGY SALES**

March 2, 2017

**VIA U.S. MAIL**
FirstEnergy Solutions
Ken Peace
341 White Pond Drive
Akron, OH 44320

Dear Ken,

This letter is intended as an update regarding the status of payment to First Energy.  Currently,
Bluestone Energy Sales Corporation has a significant amount of coal in inventory that it is
waiting to ship, which total approximately 77,059.94.   It is our intention to have all of this coal
delivered to customers by 4-15-17.  Once this coal is shipped, we will be able to send payment to
First Energy.

Thank you for your patience with us while we work through this slight delay.  Please don't hesitate
to contact me if you have any questions or concerns regarding this matter.

Sincerely,

Summer Harrison
VP of Treasury

# Exhibit C



September 24, 2018

Ms. Summer Harrison
VP of Treasury
Bluestone Energy Sales Corporation
302 S. Jefferson Street
Suite 600
Roanoke, VA 24011

RE:   Request for Final Payment - Coal Purchase Agreement (the "Agreement") is made and entered
      into on October 10, 2016, by and between Bluestone Energy Sales Corporation ("BESC") and
      FirstEnergy Solutions Corp ("FES"), an Ohio corporation (the "Parties").

Dear Ms. Harrison,

In accordance with your status letter dated March 2, 2017 (see attached, the "Letter"), FES hereby requests
payment of the final amount due for the sale of the remaining 77,059.94 tons of coal under the Agreement.
As provided in Article 2 of the Agreement, "If any Purchased Tons remain in the Stockpile as of February
28, 2017, then BESC shall pay FES for all such remaining Purchased Tons no later than March 7, 2016.".
As stated in the Letter, BESC had expected to deliver the remaining coal by April 15, 2017 and FES was
expecting to be paid the amount due of $3,082,397.60 shortly thereafter.

Please remit the amount of $3,082,397.60 to FES per the terms of the Agreement.  Should BESC fail to remit
these funds to FES by October 15, 2018, FES will pursue its rights and remedies to collect such funds from
BESC.

Thank you for your prompt attention to this matter.

Sincerely,

*James G. Mellody*
James G. Mellody
VP, Fuel and Unit Dispatch



ENTERED PURSUANT TO ADMINISTRATIVE ORDER NO. 16-04.
TERESA D. UNDERWOOD, CLERK OF BANKRUPTCY COURT

BY: /s/ Marie Randolph
     **Deputy Clerk**

**Dated: 08:41 AM December 14 2018**

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE | ) | CASE NO. **18-50757** |
| | ) | |
| **FirstEnergy Solutions Corp.** | ) | CHAPTER 11 |
| | ) | |
| DEBTOR(S). | ) | ADVERSARY PROCEEDING **18-5100** |
| | ) | |
| | ) | |
| **FirstEnergy Solutions Corp.** | ) | HONORABLE ALAN M. KOSCHIK |
| | ) | UNITED STATES BANKRUPTCY JUDGE |
| PLAINTIFF(S), | ) | |
| **v.** | ) | |
| **Bluestone Energy Sales Corp.** | ) | |
| | ) | |
| | ) | |
| DEFENDANT(S). | ) | |

### PRETRIAL ORDER

A pretrial hearing is set for the **30th day of January, 2019 at 2:15 PM** in Room 240, U.S. Courthouse Federal Building, Two S. Main St., Akron, Ohio 44308.

Failure of counsel or any unrepresented party to appear at any scheduled pretrial hearing or otherwise to comply with the provisions of this Order, or any Pretrial Order entered by this Court, may result in dismissal or default as may be appropriate.

Prior to the initial pretrial hearing, counsel for represented parties and all unrepresented parties that have appeared in this adversary proceeding are jointly responsible for arranging a conference to

discuss the nature and basis of their claims and defenses and the possibilities for a prompt settlement or resolution of the adversary proceeding, and to develop a proposed discovery plan. Following the conference, Plaintiff's counsel shall complete and submit a Pretrial Worksheet that contains, at a minimum, the information requested below, to the Court at AMK-Pretrials@ohnb.uscourts.gov by no later than **12:00 p.m. noon** on the day preceding the initial pretrial hearing. Plaintiff's counsel shall ensure that all counsel of record and unrepresented parties have received a copy of the Pretrial Worksheet.

The Court urges counsel to be as efficient as possible in the administration and prosecution of this adversary proceeding. To that end, the Court permits and encourages telephonic communication between the parties. Unless otherwise ordered, the Court shall permit telephonic participation in all pretrial conferences held except for final pretrial conference, if one is scheduled. However, counsel must notify the judge's chambers **no later than noon of the business day preceding** the scheduled pretrial conference of their request to appear telephonically and to inform the Court of the telephone number at which they can be reached.

**THE PRETRIAL WORKSHEET SHALL INCLUDE THE FOLLOWING INFORMATION:**

**Adversary Proceeding Case Number**: _____

**Date/Time of Initial Pretrial Hearing**: _____

**Parties to the Adversary Proceeding**: _____

To aid in the facilitation of telephonic communication between the parties and telephonic communication with the Court during pretrial conferences the Pretrial Worksheet shall include the number at which counsel can be reached directly:

**Plaintiff's counsel**: _____

**Defendant's counsel**: _____

**Discovery**: Counsel should discuss the type of discovery required and the respective timeframes to complete all necessary discovery in this proceeding.

**Nature of necessary discovery**: _____

**Suggested deadline for completion of all discovery**: _____

**Dispositive Motions**: In order to promote the efficient development of an accurate and appropriate record, with the exception of Rule 12(b)(1) or 12(b)(6), motions that are filed in lieu of an answer, Counsel are required to obtain the Court's permission prior to filing any dispositive motions, including motions for summary judgment and/or motions for judgment on the pleadings. Such permission will be granted for good cause shown.

**Future motions counsel anticipates filing**: _____

\*\*\*

**Stipulations**: At the close of discovery, the Court requires counsel to file jointly a list of all facts and legal conclusions that are not in dispute in this adversary proceeding that can be the subject of stipulations, including identifying all documents either party intends to introduce as an exhibit

and to which the parties agree are authentic. These stipulations will generally be due approximately two weeks after the close of discovery.

**Alternative Dispute Resolution**: The Court supports counsel's efforts to resolve matters through the use of alternative dispute resolution. If all parties to the adversary proceeding are interested in pursuing some form of alternative dispute resolution, counsel shall jointly contact Judge Koschik's chambers to assist in that process.

**Miscellaneous**: At the initial pretrial hearing, counsel shall be prepared discuss the following:

1. Dismissal of unnecessary parties;
2. Stipulation to facts and authenticity of documents and other exhibits not in dispute;
3. The deadline for amending pleadings or joining additional parties;
4. The scope of anticipated discovery;
5. Whether expert testimony is anticipated and, if so, deadlines concerning the identification of experts, the deadline for exchange or delivery of expert reports, and the deadline for deposing experts;
6. The likelihood that some or all of the action may be resolved by dispositive motions; and
7. Fully explore and be authorized to conclude settlement.

###